UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADIL KASSAB,

       Plaintiff,

v.

TARGET CORPORATION and
DIVERSIFIED MAINTENANCE
SYSTEMS, LLC,

       Defendants.
_____/

Case No. 16-12788

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT [24, 28]**

Plaintiff Adil Kassab commenced this suit in state court on June 27, 2016, asserting state-law claims of premises liability and negligence against Defendants Target Corporation ("Target") and Diversified Maintenance Systems, LLC ("DMS") arising from injuries suffered by Plaintiff in a slip and fall at a Target store in Sterling Heights, Michigan. Defendant DMS removed the case to this Court on July 28, 2016, citing the diverse citizenship of the parties. *See* 28 U.S.C. § 1332(a)(1).

Through the present motions filed in February of 2017, Defendants Target and DMS seek an award of summary judgment in their favor as to each of the claims asserted in Plaintiff's complaint. In support of their motions, Defendants first contend that Plaintiff has failed to produce evidence of a condition at Defendant Target's store that caused him to slip and fall. Defendant Target further asserts that there is no evidence that it either created or had notice of any alleged condition at its store that caused Plaintiff's injury. Defendant DMS, for its part, argues that as an outside vendor that provides housekeeping

services at various Target stores, it neither owed a duty to Plaintiff nor breached any such duty that it arguably owed.

On June 14, 2017, the Court heard oral argument on Defendants' motions. For the reasons stated more fully below, the Court GRANTS each of these two motions.

**I.   FACTS**

At around 9:40 p.m. on October 26, 2015, Plaintiff Adil Kassab and two friends visited a Target store located on Metro Parkway in Sterling Heights, Michigan. Plaintiff has testified that it was not raining or snowing that evening, and that the sidewalk was dry as he entered the store. (*See* Defendant DMS's Motion, Ex. A, Plaintiff's Dep. at 35.) Within a few steps after Plaintiff passed through the main entrance and into an area of tile flooring, his left foot slipped and he fell to the floor, injuring his shoulder and lower back. (*See id.* at 11, 17, 37-38.)

Plaintiff testified that as he entered the Target store, he was watching where he was going and did not see anything on the tile floor in the area where he fell. (*See id.* at 37.) In particular, he did not see any water or other liquid on the floor, and his clothes were not wet after he fell. (*See id.* at 38, 56.) Plaintiff did notice, however, that the area where he fell had a "clean" smell as though it had been "fresh[ly] mop[ped]," and that the tile floor was "big time shiny." (*Id.* at 37-38, 56.)

Although Plaintiff recalled that his left foot slipped just before he fell, he had "no idea" what his foot might have slipped on. (*Id.* at 38.) Thus, he could not say what had caused him to slip and fall, nor whether this incident was attributable to a substance on the floor. (*See id.* at 64.) Rather, he speculated that "something" on the floor had caused him to fall, but he could not say this for certain. (*See id.*) Plaintiff further testified that after he sought

assistance from a cashier, he returned to the area where he fell and noticed that it felt "a little slippery" when he ran his foot over this spot on the floor. (*Id.* at 69-70.)

The two friends who accompanied Plaintiff to the Target store have provided only a few additional details about the incident. One of Plaintiff's companions, Menhal Yousif, testified that he was walking in front of Plaintiff as the three men entered the store, and that he turned around when he heard Plaintiff yell and discovered that Plaintiff was lying on the floor. (*See* Defendant DMS's Motion, Ex. B, Yousif Dep. at 7-8, 10.) Because he did not actually see Plaintiff fall, Mr. Yousif could not say what had caused this accident, and when he asked Plaintiff what had happened, Plaintiff responded that he "d[id]n't know, he just fell." (*Id.* at 10, 18-19.) Mr. Yousif did not see any water or other liquid on the floor where Plaintiff fell, nor did he notice anything on the floor that Plaintiff might have tripped on. (*See id.* at 8, 19.) Mr. Yousif did detect, however, that the floor was "kind of . . . sticky," as though it might have just been waxed, but he testified that this sticky area or wax coating was "[c]lear" and could not be seen. (*Id.* at 8, 24, 26.)

Plaintiff's other companion, Ghassin Koka, has little to add to the account of Plaintiff's accident. Mr. Koka, like Mr. Yousif, was walking in front of Plaintiff when the men entered the Target store, and he did not see Plaintiff fall. (*See* Defendant DMS's Motion, Ex. C, Koka Dep. at 9-10.) Rather, Mr. Koka heard a sound behind him, and he turned around to find that Plaintiff had fallen on the floor. (*See id.*) Mr. Koka did not notice any water or other liquid on the floor inside the store, nor did he see anything else in the area that might have caused Plaintiff to trip or fall. (*See id.* at 8-10.)[1] Thus, he could not say whether

---

[1]Unlike Plaintiff, Mr. Koka testified that a "steady rain" was falling as he and his friends entered the Target store. (*Id.* at 7-8.) Although he did not actually notice any

3

Plaintiff had slipped, tripped, or fallen for some other reason.  (*See id.* at 10, 14.)

An employee at the Target store, Emily Jacob, saw Plaintiff fall out of "the corner of [her] eye" and asked whether Plaintiff was okay, and Plaintiff responded that "he was okay" and was "trying to get up."  (Defendant DMS's Motion, Ex. E, Jacob Dep. at 13-15.)  Ms. Jacob then contacted the store's leader on duty, Heather Krueger, to advise her that a customer had fallen near the front entrance to the store, but that "he said he was okay."  (*Id.* at 15-16.)  In response, Mr. Krueger told Ms. Jacob to "let her know if anything else happened" or if Plaintiff "needed anything," so Ms. Jacob returned to her work.  (*Id.* at 16-17.)  A few minutes later, Plaintiff approached Ms. Jacob and reported that his shoulder was hurt, and Ms. Jacob again radioed Ms. Krueger while Plaintiff proceeded to Guest Services near the store entrance.  (*See id.* at 19, 22.)  About 15 or 20 minutes after Plaintiff's fall, Ms. Jacob visited the area of the store where Plaintiff had fallen, and she testified that the floor was "dry" and that she did not notice any water or other substance on the floor.  (*Id.* at 22-23, 26-27.)

A second Target employee, Rochelle Tassie, was working at Guest Services at the time of Plaintiff's fall.  Ms. Tassie did not see Plaintiff fall, but first learned of this incident when Ms. Jacob notified her.  (*See* Defendant DMS's Motion, Ex. F, Tassie Dep. at 9, 12.)  Shortly thereafter, Plaintiff and his two friends came over to Guest Services and asked Ms. Tassie to call for an ambulance.  (*See id.* at 13.)  At some point after the store closed at 10:00 p.m. and Plaintiff had been taken away in an ambulance, Ms. Tassie inspected the area where Plaintiff had fallen, and she testified that she did not notice any water, other

---

water on the floor inside the store, he "assum[ed] maybe" that some moisture might have accumulated on the floor due to people entering the store from the rain.  (*Id.* at 9.)

4

liquid, or foreign substance on the floor, nor did she detect that the floor was slick or slippery. (*See id.* at 28, 33-35.)

As noted, Target employee Heather Krueger was the leader on duty at the time of Plaintiff's fall. Ms. Krueger did not witness this fall, but was told by Emily Jacob that a customer had fallen at the main entrance to the store. (*See* Defendant DMS's Motion, Ex. D, Krueger Dep. at 21-22.) Ms. Jacob indicated in this initial conversation that the customer had gotten up and continued into the store, so Ms. Krueger concluded that "nothing was needed from [her] at the time." (*Id.* at 21.) A few minutes later, however, Ms. Krueger was contacted a second time and told that the customer had requested further assistance and asked to be taken to the hospital. (*See id.* at 23-24.) In response, Ms. Krueger gathered the paperwork to be completed when a customer is injured at the store, and she proceeded to the front of the store to meet with Plaintiff. (*See id.* at 24.) Ms. Krueger then called for emergency medical assistance, asked Plaintiff about his fall and injury, filled out a guest incident report, and waited with Plaintiff until an ambulance arrived. (*See id.* at 29-31, 35-36; *see also* Defendant DMS's Motion, Ex. L, Guest Incident Report.) After Plaintiff had been taken from the store, Ms. Krueger went to the site of Plaintiff's fall to inspect and take pictures of the area, and she testified that she did not observe any water or other substance on the floor that could have caused Plaintiff to fall. (*See* Krueger Dep. at 39-40, 48-49.)

Apart from Defendant Target, Plaintiff has named Diversified Maintenance Systems, LLC ("DMS") as a second defendant in this action. At the time of Plaintiff's slip and fall, DMS had a contract with Target to provide housekeeping services at several Target locations, including the Metro Parkway store where Plaintiff fell. (*See* Defendant DMS's

Motion, Ex. H, Agreement for Store Housekeeping Services.) Under this agreement, a DMS employee arrived at the Metro Parkway store at around 6:00 a.m. each day to clean the floor and perform other housekeeping services. (*See* Krueger Dep. at 13-14; *see also* Defendant DMS's Motion, Ex. J, Chornoby Aff. at ¶¶ 5-6.) The record indicates that on the date of Plaintiff's injury, a single DMS employee worked at Target's Metro Parkway store from 6:14 a.m. until 1:56 p.m., and DMS did not provide any further cleaning or housekeeping services at this store after this employee completed his shift. (*See* Chornoby Aff. at ¶¶ 5-7.) In addition, DMS performed a full strip and wax of the floor of the Metro Parkway store once each year, and the most recent strip and wax prior to Plaintiff's October 26, 2015 slip and fall was completed several months earlier, in July of 2015. (*See id.* at ¶ 4.)

## II. STANDARD OF REVIEW

Through the present motions, Defendants Target and DMS seek awards of summary judgment in their favor on each of the claims asserted in Plaintiff's complaint. Under the pertinent Federal Rule governing these motions, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence "in a

light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences."  *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.,* 477 F.3d 854, 861 (6th Cir. 2007).  Yet, the nonmoving party may not rely on bare allegations or denials, but instead must support a claim of disputed facts by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Finally, "[a] mere scintilla of evidence is insufficient" to withstand a summary judgment motion; rather, "there must be evidence on which the jury could reasonably find for the non-moving party."  *Smith Wholesale,* 477 F.3d at 861 (internal quotation marks and citation omitted).

## III.   ANALYSIS

### A.   Plaintiff Has Failed to Produce Evidence That Defendant Target Created or Had Notice of the Condition That Allegedly Caused His Slip and Fall.

In the first count of his complaint, Plaintiff has asserted a claim of premises liability against Defendant Target, the owner of the store where Plaintiff fell and sustained injuries to his shoulder and back.  In its present motion, Target seeks an award of summary judgment in its favor on this claim, arguing (i) that Plaintiff offers only speculation, and not evidence, as to what caused his fall, and (ii) that even assuming Plaintiff fell as a result of a dangerous condition at Defendant's store, Plaintiff cannot establish that Defendant Target either created or had notice of this condition.  The Court agrees on both scores.

7

All are agreed that under Michigan law, Defendant Target owed Plaintiff a duty of due care as a "business invitee" of the Target store he was visiting at the time of his fall. *See Stitt v. Holland Abundant Life Fellowship,* 462 Mich. 591, 614 N.W.2d 88, 92 (2000). Nonetheless, a business owner such as Target is not an absolute "insurer of the safety of invitees," but instead owes only a duty "to exercise reasonable care for their protection." *Williams v. Cunningham Drug Stores, Inc.,* 429 Mich. 495, 418 N.W.2d 381, 383 (1988) (internal quotation marks and footnote with citations omitted). More specifically, a store owner is liable for injury resulting from an unsafe condition on the premises only if: (1) the condition is caused by the active negligence of the store owner or its employees; (2) the condition is known to the owner; or (3) the condition "is of such a character or has existed a sufficient length of time that [the owner] should have had knowledge of it." *Serinto v. Borman Food Stores,* 380 Mich. 637, 158 N.W.2d 485, 486 (1968) (internal quotation marks, emphasis, and citation omitted); *see also Whitmore v. Sears, Roebuck & Co.,* 89 Mich. App. 3, 279 N.W.2d 318, 320-21 (1979). In other words, the defendant business owner must have "either created the dangerous condition or had actual or constructive notice of the condition." *Sparks v. Wal-Mart Stores, Inc.,* 361 F. Supp.2d 664, 668 (E.D. Mich. 2005). It is Plaintiff's burden to produce sufficient evidence to establish a breach of this standard of care. *See Whitmore,* 279 N.W.2d at 321.

As Target observes, the first obstacle faced by Plaintiff in meeting this burden is his apparent inability to say what might have led him to fall. When asked this precise question at his deposition, Plaintiff responded that he had "no idea" what caused him to slip and fall. (*See* Plaintiff's Dep. at 38, 64.) While he observed that the floor in the area where he fell was "shiny" and had a "clean" smell as though it had been "fresh[ly] mop[ped]," he could

not say whether he slipped and fell for this or some other reason. (*Id.* at 37-38, 64.) Moreover, although Plaintiff testified that the floor felt "a little slippery" when he returned a few minutes later to the area where he fell, this inspection did not disclose any substance or object on the floor, nor did Plaintiff hazard an opinion based on this inspection as to what might have caused his fall. (*Id.* at 70, 74.) Likewise, one of the men who accompanied Plaintiff to the store, Menhal Yousif, opined that the floor where Plaintiff fell seemed "sticky," as though it had just been waxed, but he acknowledged that he did not actually see Plaintiff fall and did not know what had caused this accident. (Yousif Dep. at 8, 10, 18.)

Under comparable circumstances, the Michigan courts have held that a premises liability claim cannot rest upon bare speculation as to the cause of the plaintiff's injury. In *Stefan v. White,* 76 Mich. App. 654, 257 N.W.2d 206, 207-08 (1977), for example, the plaintiff tripped and fell while walking through a doorway at the defendant's home, but she testified that she had no recollection of her fall and "did not know how or why she fell." The plaintiff's husband stated in an affidavit that although he did not see his wife fall, his inspection of the doorway where she fell revealed a metal strip that extended above the floor, and he surmised that the heel of his wife's shoe had caught upon this metal strip and caused her to fall. *Stefan,* 257 N.W.2d at 208.

The trial court granted the defendant homeowner's motion for summary judgment, and the Michigan Court of Appeals affirmed this ruling. In so holding, the court first observed that the plaintiff's testimony "negated a causal relationship between her fall and [the] defendant's premises," where she could not identify any condition on the premises that led to her fall. 257 N.W.2d at 209. Next, while the plaintiff's husband suggested a possible cause for this fall, the court found that his affidavit was unduly speculative:

> . . . . The mere occurrence of plaintiff's fall is not enough to raise an inference of negligence on the part of defendant. As has been noted, plaintiff's husband did not see the fall. His affidavit points to one possible cause — the metal strip — but it presents no evidence linking that strip to the fall. Only conjecture can make this the causal element to the exclusion of all others. Such speculation or conjecture is insufficient to raise a genuine issue of material fact.

257 N.W.2d at 210 (citation omitted).

Similarly, in *Demo v. Red Roof Inns, Inc.,* No. 07-1624, 274 F. App'x 477 (6th Cir. Apr. 23, 2008), the Sixth Circuit applied Michigan law to determine that the plaintiff's premises liability claim failed for lack of evidence of causation. The plaintiff in that case slipped and fell as he stepped off a landing outside his hotel room, and he "later surmised 'it was a sheet of ice there'" but "conceded that 'no one can actually say'" what had caused him to fall. *Demo,* 274 F. App'x at 478-79 (citation omitted). The court found that this testimony "amount[s] to speculation about the cause of [the plaintiff's] fall," and it concluded that the plaintiff's premises liability claim was defeated by the Michigan court decisions, in *Stefan* and other cases, holding that a plaintiff's "equivocal" and "conjectural" deposition testimony about the cause of an accident was not sufficient to raise an inference that the defendant had breached a duty of care owed to an invitee. *Demo,* 274 F. App'x at 479; *see also Billops v. Target Corp.,* No. 12-15395, 2014 WL 806850, at *2 (E.D. Mich. Feb. 28, 2014) (awarding summary judgment in the defendant's favor on a premises liability claim where the plaintiff testified that she saw a piece of loose carpet "after her fall and theorized that she fell on it," and emphasizing that "a theory of how an accident occurred is not sufficient to establish a genuine issue of fact" as to causation); *Hendrix-Brown v. Mt. Morris Charter Township,* No. 311695, 2013 WL 6670803, at *2 (Mich. Ct. App. Dec. 17, 2013) (finding that the defendant township was entitled to governmental immunity where "the testimony

of the witnesses only identified the location of [the plaintiff's] fall and then surmised that an uneven [sidewalk] caused the fall"); *Hines v. Pioneer State Mutual Insurance Co.,* No. 247093, 2004 WL 1778879, at *4-*5 (Mich. Ct. App. Aug. 10, 2004) (holding that the plaintiff's claim impermissibly "relie[d] on mere conjecture" where the plaintiff's decedent "stated that she must have slipped and fallen on something, but she didn't know what," and where she "did not indicate that she fell because of a slippery substance on the ground" (internal quotation marks omitted)).

Just as in these prior cases, Plaintiff here offers only speculation and conjecture in support of his claim that he fell due to an unsafe condition at Defendant Target's store. As noted, Plaintiff testified that he felt his foot slip as he fell, but he admitted that he had "no idea" what his foot might have slipped on or what caused him to fall. (Plaintiff's Dep. at 38, 64.) Although Plaintiff testified that the floor looked "shiny" and that the store entrance smelled "clean" as though it had been "fresh[ly] mop[ped]," (*id.* at 37-38), nothing in his testimony links these general observations to the precise location and cause of his slip and fall. Moreover, just as the premises liability claim in *Stefan* was not saved by after-the-fact speculation that the plaintiff might have tripped on an exposed metal strip, Plaintiff here cannot raise an inference of causation through his and his companion's after-the-fact observations that the floor near the store entrance felt "a little slippery," (Plaintiff's Dep. at 70), or seemed "sticky" as though it had "just [been] waxed," (Yousif Dep. at 8). Accordingly, Plaintiff has failed as a matter of law to establish the threshold element of a claim of premises liability — namely, that he was injured as a result of an unsafe condition at Defendant Target's store.

In any event, even assuming that Plaintiff could establish the requisite causal

connection between his slip and fall and an unsafe condition at the Target store where he fell, the record fails to provide a basis for charging Defendant Target with liability for this allegedly unsafe condition. As observed earlier, a premises owner owes a duty to protect invitees from an unsafe condition on the premises only if (i) the condition was caused by the owner or its employees, or (ii) the owner knew or should have known of the existence of this unsafe condition. *See Clark v. Kmart Corp.*, 465 Mich. 416, 634 N.W.2d 347, 348-49 (2001); *Whitmore,* 279 N.W.2d at 321. Given Plaintiff's inability to even identify a specific condition at the Target store that caused him to slip and fall, he faces considerable difficulty in showing that Defendant Target either caused or had actual or constructive notice of this condition. Indeed, Plaintiff makes no attempt to produce evidence that a Target employee either created or had actual knowledge of any hazardous condition that might have caused him to slip and fall. Rather, Plaintiff relies solely on a claim of constructive notice, arguing that if Defendant Target had "conducted reasonably-timed inspections of the area" where Plaintiff fell, it "would have discovered" the unsafe condition that purportedly caused this fall. (Plaintiff's Response in Opp. to Defendant Target's Motion at 9.)

Plaintiff's theory of constructive notice is both factually and legally flawed. First, because nothing in the record sheds any light on the duration of the unsafe condition that allegedly caused Plaintiff's fall, the Court fails to see how it can be said that a "reasonably timed" inspection would have uncovered this condition. Rather, it is a matter of pure conjecture whether inspections at any particular interval would have enabled Defendant Target to identify and remediate the condition that allegedly caused Plaintiff's slip and fall. Moreover, no witness in this case — whether Plaintiff, either of his two companions, or any Target employee — claims to have seen any water, liquid, or other substance on the floor

12

in the area where Plaintiff fell, so it is not clear what an inspection of this area would have revealed.

Next, while Plaintiff points to the decision of the Michigan Court of Appeals in *Grandberry-Lovette v. Garascia,* 303 Mich. App. 566, 844 N.W.2d 178, 184-85 (2013), as purportedly recognizing a premises owner's duty to conduct reasonably timed inspections of its property for unsafe conditions, a more recent Michigan Supreme Court ruling undermines Plaintiff's proffered view of the law of constructive notice. In *Lowrey v. LMPS & LMPJ, Inc.,* 500 Mich. 1, 890 N.W.2d 344, 346-47 (2016), the plaintiff brought a premises liability suit arising from her slip and fall on a stairway as she exited the defendant's diner. The trial court awarded summary judgment in the defendant's favor, holding (i) that the plaintiff had "failed to raise a genuine issue of material fact regarding whether defendant had actual or constructive knowledge of the condition of the stairs," and (ii) that the condition that caused the plaintiff's fall was open and obvious. *Lowrey,* 890 N.W.2d at 347. The Court of Appeals reversed this grant of summary judgment, explaining that the defendant had failed to demonstrate its lack of constructive notice of the hazard that caused the plaintiff's fall "because it had not presented evidence of what a reasonable inspection would have entailed under the circumstances." 890 N.W.2d at 347.

The Michigan Supreme Court reversed the decision of the Court of Appeals and reinstated the trial court's award of summary judgment in the defendant's favor. In so ruling, the court identified two defects in the Court of Appeals' analysis. First, the lower court had "erroneously shifted the burden to defendant" by demanding that it produce evidence of its lack of constructive notice, when the pertinent summary judgment standard required only that the defendant demonstrate "the insufficiency of plaintiff's evidence" as

13

to the issue of constructive notice. 890 N.W.2d at 349. Next — and of greater importance here — the Michigan Supreme Court found that the Court of Appeals had effectively (and erroneously) "imposed a new element" on a defendant in a premises liability suit by insisting that the defendant "present evidence of . . . routine or reasonable inspection[s]" in order to prove its "lack of constructive notice of a dangerous condition on its property." 890 N.W.2d at 349. Because it is the plaintiff's burden to "establish that defendant, as a premises owner, possessed actual or constructive notice of [a] dangerous condition" on its land, the court emphasized that the defendant need not produce evidence of inspection practices that would refute a claim of constructive notice. 890 N.W.2d at 349-50. Rather, the plaintiff must demonstrate the defendant's constructive notice of an unsafe condition on its property, through evidence "that the hazard was of such a character, or had existed for a sufficient time, that a reasonable premises possessor would have discovered it." 890 N.W.2d at 350. The court held that the plaintiff in that case had not met this evidentiary burden, in light of (i) the evidence that the plaintiff and her friends had "traversed the stairs several times during the evening without incident," thereby indicating that "the hazardous condition that caused plaintiff's fall had not been present on the steps for the entirety of the evening," and (ii) the plaintiff's failure to produce any "evidence that the hazardous condition in this case was of such a character that the defendant should have had notice of it." 890 N.W.2d at 350-51.

This same reasoning applies with full force here. As discussed earlier, there is no evidence as to the duration of the alleged hazard that caused Plaintiff's fall, so it cannot be inferred that this hazard existed for a sufficient time to charge Defendant Target with constructive notice of it. To the contrary, as in *Lowrey,* the record here — most notably,

14

a video recording of the entryway where Plaintiff fell — shows that others (including Plaintiff's two companions) traveled through this area without incident before Plaintiff's slip and fall, and this suggests that any unsafe condition in this area was not widespread or especially lengthy in duration. Similarly, there is no evidence that the condition that caused Plaintiff's fall was of such a character that Target employees should have detected it. Rather, the available evidence again is to the contrary, where no witness reported having observed any liquid or other substance on the floor that could have caused Plaintiff to slip and fall. Plaintiff himself testified that when he returned to the area after his fall, he discovered a slippery spot only by feeling the floor with his foot, and not through visual inspection, (*see* Plaintiff's Dep. at 70, 74), and Plaintiff's friend, Mr. Yousif, likewise stated that he felt a sticky spot with his foot but could not see any substance that would account for this stickiness, (*see* Yousif Dep. at 8-9, 26). Accordingly, the record provides no basis for charging Defendant Target with notice of an unsafe condition at its store that caused Plaintiff to slip and fall, and it follows that Plaintiff has failed as a matter of law to establish this element of his claim of premises liability.

**B. Plaintiff Has Failed to Produce Evidence That the Active Negligence of Either Defendant Caused His Slip and Fall.**

In the remaining count of his complaint, Plaintiff alleges that he slipped and fell as a result of the active negligence of one or both Defendants, Target and DMS. For reasons similar to those already mentioned, the Court readily concludes that Target and DMS are entitled to awards of summary judgment in their favor on this claim of active negligence.

Turning first to the claim of active negligence asserted against Defendant Target, the

same reasoning that defeats Plaintiff's claim of premises liability against Target precludes this claim as well. As already discussed, while Plaintiff could recover under a premises liability theory by showing that Defendant Target created (or had actual or constructive notice of) an unsafe condition at its store that led to Plaintiff's injury, nothing in the record lends any support whatsoever to the proposition that Target or any of its employees created the hazard that caused Plaintiff to slip and fall. Moreover, the Michigan courts have emphasized that the mere "happening of [an] accident alone is not evidence of negligence." *Whitmore,* 279 N.W.2d at 321 (internal quotation marks and citations omitted). Accordingly, Plaintiff has failed to produce evidence from which a trier of fact could conclude that his slip and fall and resulting injuries were attributable to the negligence of Defendant Target.

Plaintiff's negligence claim against Defendant DMS is defeated on largely the same grounds. First, just as Plaintiff's claim of premises liability fails at the threshold for lack of evidence, as opposed to bare conjecture, as to what actually caused Plaintiff to slip and fall, this same evidentiary deficiency precludes Plaintiff from linking this (unknown) hazard to some negligent act or omission by DMS. Next, because DMS is not the owner of the premises where Plaintiff sustained his alleged injuries, it cannot be charged with liability based on the mere existence of a hazardous condition on the premises, or even its knowledge that this hazard existed. Rather, DMS may be held liable only if this alleged hazard arose as a result of its own negligent act or omission as it carried out its custodial duties at the Target store where Plaintiff suffered his injuries. *See Loweke v. Ann Arbor Ceiling & Partition Co.,* 489 Mich. 157, 809 N.W.2d 553, 562 (2011).

Just as there is no evidence in the record that Defendant Target or its employees created the allegedly unsafe condition that caused Plaintiff to slip and fall, nothing in the

16

record indicates that Defendant DMS or one of its employees created any such unsafe condition. According to the undisputed record, only a single DMS employee worked at Target's Metro Parkway store on the day of Plaintiff's slip and fall, and this employee had completed his housekeeping chores and departed the premises by 2:00 p.m., over seven hours before Plaintiff suffered his injuries. While Plaintiff suggests that the floor where he fell was shiny and slippery and smelled as though it had been freshly mopped, (*see* Plaintiff's Dep. at 37-38, 70), only the most fanciful conjecture could forge a connection between this purportedly hazardous floor surface and a DMS employee's allegedly negligent performance of his custodial duties several hours earlier, particularly where countless other customers presumably had safely traversed this floor in the meantime.

Likewise, although Plaintiff's companion, Menhal Yousif, has testified that the floor seemed sticky where Plaintiff fell, leading him to suspect that it had recently been waxed, (*see* Yousif Dep. at 8, 26), Defendant DMS states without contradiction that it performed a full strip and wax of the floor at the Metro Parkway store only once a year, and that the last such waxing of this floor prior to Plaintiff's injury was done in July of 2015. Clearly, Plaintiff cannot hope to establish a causal link between DMS's allegedly negligent floor waxing at the Metro Parkway store in July of 2015 and Plaintiff's slip and fall at this store roughly three months later. The Court finds, therefore, that Plaintiff's negligence claim against Defendant DMS is wholly lacking in evidentiary support.

## IV.  CONCLUSION

For these reasons,

The Court hereby GRANTS Defendant Target Corporation's February 21, 2017 motion for summary judgment (Dkt. 24), as well as the February 28, 2017 motion for summary

17

judgment brought by Defendant Diversified Maintenance Systems, LLC (Dkt. 28).

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: July 6, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 6, 2017, by electronic and/or ordinary mail.

s/Carol J. Bethel
Case Manager